**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-350

SAFE STREETS ALLIANCE and NEW VISION HOTELS TWO, LLC,

           Plaintiffs,

     v.

MEDICAL MARIJUANA OF THE ROCKIES, LLC; GERALD JAY OLSON; THE
MANAGERS, INC; ROBERT L. HAUSSMAN; CHRISTINE VOUTOUR; DAVID KATZ;
JOHN DOE 1; DIRK FOWLER; BANK OF THE WEST; MERCHANTS BONDING CO.;
ACCOUNTING SPECIALISTS, INC.; AND MICHAEL MASSA,

           Defendants.

_____

**COMPLAINT**

_____

Plaintiffs the Safe Streets Alliance ("Safe Streets") and New Vision Hotels Two, LLC ("New Vision") file this suit to vindicate the federal laws prohibiting the cultivation and sale of recreational marijuana and their rights under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). New Vision is a member of Safe Streets and the owner of the Holiday Inn in Frisco, Colorado. It is suffering injuries to its business and property caused by the operations of Summit Marijuana, a state-licensed recreational marijuana store that plans to open less than 75 yards from the front entrance of New Vision's hotel. RICO requires those who engage in racketeering activity—including the commercial production and sale of recreational marijuana—to pay their victims treble damages, costs, and attorneys' fees. Under RICO, Summit Marijuana and those who conspired with it to violate the federal marijuana laws are jointly and severally liable for New Vision's injuries. Plaintiffs also seek an injunction under RICO directing Summit Marijuana to stop violating the federal drug laws.

## I.
## INTRODUCTION

1.      It is a bedrock principle of the United States Constitution that federal law is the supreme law of the land. State laws that are flatly inconsistent with constitutionally authorized federal law have no force or effect. On the issue of recreational marijuana, federal law is clear: it is a felony under the Controlled Substances Act of 1970 ("CSA") to deal in marijuana. Despite the express federal prohibition on marijuana, Colorado and many of its local jurisdictions have enacted laws, ordinances, and regulations designed to promote the growth of a billion dollar commercial marijuana industry. Yet notwithstanding that recreational  marijuana is now "legal" in Colorado, the drug's cultivation, sale, and possession remain serious federal offenses in

Colorado, just as they are everywhere else in the United States.  Indeed, those associated with Colorado's largest-scale marijuana producers risk being sent to federal prison for the rest of their lives.  The people of Colorado are free to advocate for a change in this federal criminal prohibition, but they must do so through their elected representatives in Congress.  Under our federal system, Congress alone can authorize revision of federal laws prohibiting the commercial trade in recreational marijuana.

2.      Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal marijuana laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into Colorado's commercial marijuana industry.  But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially-enforceable rights under federal law.  The Department of Justice can no more amend a federal statute than can the State of Colorado, and marijuana remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970.

3.      Marijuana businesses make bad neighbors.  They drive away legitimate businesses' customers, emit pungent, foul odors, attract undesirable visitors, increase criminal activity, increase traffic, and reduce property values.  Safe Streets is a nonprofit organization devoted to reducing crime and illegal drug dealing.  New Vision is a business and property owner that is already suffering economic losses caused by the planned operations of a nearby recreational marijuana business.  Plaintiffs bring this suit to vindicate their federal rights under RICO, 18 U.S.C. §§ 1961 et seq., and the CSA, 21 U.S.C. §§ 801 et seq.

2

4.      Dealing in marijuana is racketeering activity under RICO, and those who engage in a pattern of racketeering activity through a corporation or other enterprise are liable for three times the economic harm they cause plus costs and attorneys' fees.  Those who conspire with racketeers by agreeing to assist them are likewise liable.  RICO also gives federal courts the power to order racketeering enterprises and their coconspirators to cease their unlawful operations.  Accordingly, New Vision asks this Court to award it the damages, costs, and fees to which it is entitled, and both Plaintiffs request that the Court order the Defendants to cease their open and notorious violation of federal law.

## II.
## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiffs' claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because the Defendants reside or transact their affairs in Colorado and a substantial portion of the events giving rise to this suit occurred in Colorado.

## III.
## PARTIES

7.      Plaintiff Safe Streets is a membership organization whose members are interested in law enforcement issues, particularly the enforcement of federal laws prohibiting the cultivation, distribution, and possession of marijuana.  Plaintiff New Vision Hotels Two, LLC is a member of Safe Streets.  Safe Streets has other individual and organizational members throughout Colorado.

8.      Plaintiff New Vision Hotels Two, LLC is a Colorado limited liability company that owns the Holiday Inn in Frisco at 1129 Summit Boulevard, Frisco, CO 80443.  New Vision's principal office is located at 7130 Commerce Center Drive, Colorado Springs, CO 80919.

9.      Defendant Medical Marijuana of the Rockies, LLC does business under the name Summit Marijuana and has its principal place of business at 720 Summit Boulevard, Suite 101A, Frisco, CO 80443.  It is hereinafter referred to as "Summit Marijuana."  Summit Marijuana plans to open a recreational marijuana cultivation facility and retail shop at 1121 Dillon Dam Road, Frisco, CO 80443, immediately across the parking lot from New Vision's Frisco hotel.

10.     Defendant Gerald Jay Olson ("Olson") is the owner and sole member of Summit Marijuana and resides at 85 Wheeler Place #209, Copper Mountain, CO 80443.

11.     Defendant The Managers, Inc. is a Colorado corporation that owns and has its principal place of business at 1121 Dillon Dam Road, Frisco, CO 80443.  The Managers has entered into an agreement with Summit Marijuana for the sale and lease of that property, which Summit Marijuana intends to use for the purpose of conducting its recreational marijuana business.

12.     Defendant Robert L. Haussman ("Haussman") is President of The Managers, Inc. and resides at 213 Highwood Terrace, Frisco, CO 80443.

13.     Defendant Christine Voutour ("Voutour") is Secretary of The Managers, Inc. and resides at 14 Alpine Drive, Frisco, CO 80443.

4

14.     Defendant David Katz ("Katz") lent Summit Marijuana $35,000 for its marijuana operations.  His mailing address is P.O. Box 10000, Suite 257, Silverthorne, CO 80498.

15.     Defendant John Doe 1 is providing financing to support Summit Marijuana's acquisition and renovation of the property at 1121 Dillon Dam Road.

16.     Defendant Dirk Fowler ("Fowler") is a construction contractor who is renovating the property at 1121 Dillon Dam Road to make it suitable for use as a recreational marijuana shop and grow facility.  His principal place of business is 507 Main Street, Frisco, CO 80443.

17.     Defendant Bank of the West is a California corporation that has its principal office at 180 Montgomery Street, San Francisco, CA 94104.  Bank of the West operates a bank branch at 1000 N. Summit Boulevard, Frisco, CO 80443, where Summit Marijuana and/or Olson maintain bank accounts into which the proceeds of their unlawful marijuana sales are deposited.

18.     Defendant Merchants Bonding Co. is an Iowa corporation that issues surety bonds on behalf of marijuana businesses in Colorado, including Summit Marijuana.  Its principal place of business at 2100 Fleur Drive, Des Moines, IA 50321.

19.     Defendant Accounting Specialists, Inc. employs Defendant Michael Massa, who provides accounting services to Summit Marijuana.  The principal place of business for Accounting Specialists and Massa is 1 West 1st Street, Nederland, CO 80466.

## IV.
## FACTUAL ALLEGATIONS

**Federal Law Prohibits the Production and Distribution of Recreational Marijuana**

20.     Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act.  84 Stat. 1236.  Among the purposes of the CSA was to reduce drug

abuse and the illegitimate traffic in controlled substances in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

21.     When it passed the CSA, Congress found that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," 21 U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," *id.* § 801(3).  The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the illicit drug trade.

22.     The CSA categorizes drugs according to a series of schedules, with the most dangerous drugs falling under Schedule I.  *See id.* § 812(b).  Schedule I drugs have "a high potential for abuse."  *Id.* § 812(b)(1).

23.     In enacting the CSA, Congress classified marijuana as a Schedule I drug.  *Id.* § 812(c).  Congress thus deemed marijuana to have a high potential for abuse.  *Id.* § 812(b)(1).  By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress made the manufacture, distribution, or possession of marijuana a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study.  *Id.* §§ 823(f), 841(a)(1), 844(a).

24.     The large-scale manufacture and distribution of marijuana is a serious felony under the CSA.  A first-time offender convicted of producing or distributing 1,000 or more marijuana plants is subject to a sentence of 10 years to life imprisonment.  *Id.* § 841(b)(1)(A).  Growing 100 or more marijuana plants subjects the first-time offender to a sentence of 5 to 40

years imprisonment.  *Id.* § 841(b)(1)(B).  The cultivation and sale of smaller amounts of

marijuana is punishable by maximum sentences that are in some cases as long as 20 years.  *See*

*id.* § 841(b)(1)(C), (D).  The CSA also criminalizes the possession of marijuana.  Unless

otherwise authorized by federal law, possession of marijuana by a first-time offender is

punishable by up to 1 year of imprisonment.  *Id.* § 844(a).

25.     In addition to its prohibitions on cultivation, sale, and possession of marijuana,

the CSA also forbids a wide range of other activities connected with the operations of a

marijuana business.  Thus, it is a crime to possess "any equipment, chemical, product, or

material" with the intention of using it to manufacture marijuana, *id.* § 843(a)(6), or to distribute

any such material with the knowledge that it will be used to manufacture marijuana, *id.*

§ 843(a)(7).  The CSA bars the use a telephone, email, mail, or any other "communication

facility" in furtherance of the manufacture or sale of marijuana, *id.* § 843(b), and it is a federal

crime to use the Internet to advertise the sale of marijuana, *id.* § 843(c)(2)(A).  Reinvesting the

proceeds from marijuana operations is also a crime, *id.* § 854(a), as is knowingly facilitating a

financial transaction involving funds derived from manufacturing and selling marijuana, 18

U.S.C. §§ 1956, 1957, 1960.  It is also a crime to knowingly lease, rent, maintain, manage, or

control a place where marijuana is manufactured or sold.  21 U.S.C. § 856.  Maintaining a

marijuana business within 1,000 feet of a service station that sells fuel to commercial vehicles is

an especially serious offense, *id.* § 849, as is leading a group of five or more people who commit

a continuing series of federal marijuana crimes, *id.* § 848.  And attempting or conspiring to

commit most of those crimes is also a criminal offense.  *See id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a).

26.     These criminal prohibitions on virtually every aspect of the marijuana business make the federal policy embodied in the CSA unmistakably clear: marijuana is a dangerous drug that is banned throughout the United States.  And because RICO defines most violations of the CSA as "racketeering activity," *see* 18 U.S.C. § 1961(1)(D), any business engaged in the commercial cultivation and sale of recreational marijuana is a criminal enterprise for purposes of federal law.  Those who conduct or conspire to assist such enterprises are subject to the severe criminal sanctions and civil liability that RICO imposes.  *See id.* § 1962(c), (d).

### Colorado and the Town of Frisco Purport To Authorize the Production and Distribution of Recreational Marijuana

27.     Despite the strict federal prohibitions on virtually every aspect of the commercial marijuana business, Colorado and many of its local jurisdictions have erected a marijuana regulatory regime that purports to authorize and seeks to regulate, tax, and promote those federal crimes.

28.     In 2012, Colorado voters approved Amendment 64, an amendment to the state constitution that legalizes recreational (sometimes called "retail") marijuana under Colorado law. Amendment 64 declares it to be "not unlawful" to possess, use, display, purchase, transport, grow, or process marijuana for personal use in compliance with the State's recreational marijuana regulatory regime.  COLO. CONST. art. XVIII, § 16(3).  It also says that it is "not unlawful" for a business to manufacture, possess, purchase, cultivate, harvest, process, package,

transport, display, or possess marijuana for sale so long as the business complies with state and local recreational marijuana statutes and regulations. *Id.* § 16(4).

29.     To give effect to and further the goals of Amendment 64, the Colorado General Assembly passed the Colorado Retail Marijuana Code. COLO. REV. STAT. § 12-43.4-101 et seq. The Retail Marijuana Code purports to expressly authorize the cultivation, distribution, and possession of marijuana, *see id.* § 12-43.4-103(4), and it sets up a regulatory regime under which recreational marijuana businesses that obtain state and local marijuana licenses can operate with the State's blessing, *see id.* § 12-43.4-304(1).

30.     Consistent with the Retail Marijuana Code, the Colorado Department of Revenue's Marijuana Enforcement Division ("MED") has adopted regulations that specify the procedures by which recreational marijuana businesses in Colorado may obtain state licenses. The Town of Frisco likewise has a section of its Town Code dedicated to the procedures for issuing local recreational marijuana licenses.

31.     Among Amendment 64's stated aims is "enhancing revenue for public purposes." COLO. CONST. § 16(1)(a). To that end, recreational marijuana sales are subject to a ten percent state recreational marijuana sales tax, COLO. REV. STAT. § 39-28.8-202, a fifteen percent state excise tax, *id.* § 39-28.8-302(1)(a), as well as the state's ordinary 2.9% sales tax. Colorado also enriches itself from the recreational marijuana industry by charging licensees numerous hefty permitting fees.

32.     Predictably, Colorado's efforts to promote the recreational marijuana industry have yielded substantial revenues for the state. MED records indicate that in December 2014

alone, Colorado received approximately $6.4 million in sales taxes from the recreational

marijuana industry, along with additional $510,790 in license and application fees.  The Town of

Frisco likewise hopes to profit from the recreational marijuana industry, projecting that it will

collect $125,000 in recreational marijuana revenue in 2015.  Colorado and Frisco are thus

enriching themselves by systematically authorizing, facilitating, and promoting serious federal

drug crimes.

33.     Whatever the effect on state law of Amendment 64 and its implementing statutes

and regulations, they do not—and cannot—repeal the federal ban on recreational marijuana or

the legal liability RICO imposes on those who operate or agree to assist recreational marijuana

businesses in violation of federal law.

### The Defendants Form Racketeering Enterprises that Produce and Distribute Recreational Marijuana

34.     The building at 1121 Dillon Dam Road is prominently located south of Interstate

70, just off of the same highway exit that skiers and other vacationers take when driving from

Denver to Breckenridge.  The building is situated near the commercial heart of Frisco, an area

with shops and hotels frequented by tourists.  Defendant The Managers, Inc. owns the two-story

building at 1121 Dillon Dam Road, which has long been occupied by stores and businesses that

cater to out-of-town visitors.

35.     On August 19, 2014, Defendant Summit Marijuana, acting by and through its

owner Defendant Olson, entered into a contract to lease and ultimately purchase 1121 Dillon

Dam Road from The Managers, Inc.  Under the terms of the deal, Summit Marijuana would pay

approximately $1.6 million for the building in late March 2015, but it would take possession of a

portion of the building as a short-term lessee in September 2014 and begin renovations for the purpose of operating a recreational marijuana retail shop and grow facility. Defendant Haussman signed this real estate agreement and a subsequent lease on behalf of The Managers, Inc.

36.     It was understood and agreed upon by both parties to the real estate transaction and their agents that the 1121 Dillon Dam Road property was to be used to grow and sell recreational marijuana. Just weeks after the real estate transaction was entered into, Summit Marijuana applied for a state license to operate a recreational marijuana shop and grow facility in the building. As part of that application process, Defendant Christine Voutour signed the following statement, which was included with Summit Marijuana's application: "I, Christine Haussman Voutour, Secretary and Officer of Managers, Inc., the owner of . . . 1121 Dillon Dam Road, Frisco, CO 80443, hereby authorize[ ] [Summit Marijuana] to use the Premises leased to them for . . . Recreational Marijuana uses." On information and belief, Robert Haussman was aware of and approved that statement. By leasing and maintaining the property for use in the recreational marijuana business, Summit Marijuana, The Managers, Inc., Olson, Haussman, and Voutour all violated 21 U.S.C. § 856. Furthermore, as Voutour's submission in support of Summit Marijuana's license application shows, Summit Marijuana, The Managers, Inc., Olson, Haussman, and Voutour agreed and conspired, in violation of 21 U.S.C. § 846, to work together to promote efforts to grow and sell marijuana at 1121 Dillon Dam Road. Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

37.     On information and belief, Summit Marijuana, The Managers, Inc., Olson, Haussman, and Voutour all used the telephone, mail, email, or other communication facilities to complete the unlawful real estate transaction between Summit Marijuana and The Managers. Such use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

38.     Summit Marijuana's applications for state and local recreational marijuana licenses describe its ambitious plan to transform the 1121 Dillon Dam Road property into a large-scale, commercial recreational marijuana cultivation and distribution center.  Summit Marijuana applied for a state license that would allow it to grow up to 3,600 plants at that location, and its license application materials describe its plan to develop the building in several "phases."  "During Phase one," Summit Marijuana said that it "will be operating a small retail dispensary and small retail grow in the building."  A schematic included in the application shows a recreational marijuana shop occupying approximately 750 square feet of the first floor, with a recreational marijuana grow taking up virtually the entire 5,000 square foot second floor.

39.     In subsequent phases, Summit Marijuana said that it intends to expand its operations to include the manufacture of marijuana-infused foods, to use "natural light greenhouses to cultivate cannabis on the roof top," and "to bring to Frisco Colorado the 'Greenest' possible solution for cannabis production and provide a model for the rest of the world to follow."

40.     Summit Marijuana could carry out these plans only by operating a continuing criminal enterprise in violation of 21 U.S.C. § 848.  Furthermore, Summit Marijuana's plan to

grow and sell recreational marijuana would violate 21 U.S.C. § 841(a); possessing the necessary facilities, equipment, and materials would violate 21 U.S.C. § 843(a)(6); and maintaining the premises to operate a recreational marijuana business would violate 21 U.S.C. § 856.  Because 1121 Dillon Dam Road is less than 1,000 feet from the Shell gas station at 1125 North Summit Boulevard, which provides fuel service to commercial vehicles, Summit Marijuana's planned operations would also violate 21 U.S.C. § 849.  All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

41.     On information and belief, Summit Marijuana and Olson currently possess marijuana plants, equipment, and materials that they intend to use in their recreational marijuana business in violation of 21 U.S.C. §§ 841(a) and 843(a)(6).

42.     On December 29, 2014, MED granted Summit Marijuana's application to operate recreational marijuana facilities at 1121 Dillon Dam Road, conditioned on it obtaining a local license to operate at the same location.  Summit Marijuana's license application to the Town of Frisco is still pending.

43.     To pay for the building, the required renovations, and its other illegal drug activities, Summit Marijuana obtained financing from Olson, Defendant David Katz, and Defendant John Doe 1.  When they agreed to provide the necessary funding, Olson, Katz, and John Doe 1 had full knowledge of Summit Marijuana's plans to operate an ongoing illegal drug enterprise and intended to further those efforts.  In April 2013, Katz agreed to loan Summit Marijuana $35,000 for five years at an 11% interest rate—a rate far higher than that typically paid by non-criminal businesses.  On information and belief, Olson and John Doe 1 provided

Summit Marijuana with financing under similar terms that reflected the risk inherent in financing a criminal drug enterprise.  In agreeing to knowingly provide the financing that Summit Marijuana needed to operate its marijuana business with the intent to further Summit Marijuana's criminal activities, Olson, Katz, and John Doe 1 conspired together with Summit Marijuana to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

44.     On information and belief, Summit Marijuana, Olson, Katz, and John Doe 1 all used the telephone, email, or other communication facilities to negotiate and complete their investments in the criminal enterprise.  The criminal use of such communication facilities violates 21 U.S.C. § 843(b) and is racketeering activity under 18 U.S.C. § 1961(1)(D).

45.     Defendant Michael Massa works for Defendant Accounting Specialists, Inc. and is Summit Marijuana's accountant.  On information and belief, Accounting Specialists, by and through Massa, maintains Summit Marijuana's books and records and prepares its tax returns. As the company's accountant, Massa is compensated for his work and is aware of Summit Marijuana's numerous violations of the CSA and its plans to operate an ongoing criminal enterprise at 1121 Dillon Dam Road.  By agreeing to provide accounting services to Summit Marijuana and thereby further its criminal activities, Accounting Specialists and Massa conspired with Summit Marijuana, Olson, Katz, and John Doe 1 to commit felonies under the CSA in violation of 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

46.     Since at least October 2014, Defendant Bank of the West has maintained a business bank account for Summit Marijuana.  On information and belief, Bank of the West is

aware that Summit Marijuana's account is used by an illegal marijuana business and that

proceeds from that business are being deposited in Summit Marijuana's account.  Bank of the

West is also aware, on information and belief, that Summit Marijuana is developing property at

1121 Dillon Dam Road for the purpose of growing and selling recreational marijuana.

Accordingly, Bank of the West conspired with Summit Marijuana, Olson, Katz, and John Doe 1

to assist in the enterprise's drug crimes, thus violating 21 U.S.C. § 846, which is racketeering

activity under 18 U.S.C. § 1961(1)(D).

47.      On October 30, 2014, Defendant Merchants Bonding Co. issued a $5,000 surety

bond on behalf of Summit Marijuana, guaranteeing its tax payments to the State of Colorado as

contemplated by COLO. REV. STAT. § 12-43.4-303.  At the top of the bond instrument, in large

bold letters, the following words are written: "Colorado Retail Marijuana License Bond."

Merchants Bonding Co. knew and intended for Summit Marijuana to use this surety bond to

obtain recreational marijuana licenses as part of its efforts to operate a marijuana business in

violation of the CSA.  By issuing the surety bond with the intent to further Summit Marijuana's

federal drug crimes, Merchants Bonding Co. conspired with Summit Marijuana and Olson to

commit crimes under the CSA in violation of 21 U.S.C. § 846.  That is racketeering activity

under 18 U.S.C. § 1961(1)(D).

48.      Since January 2014, Defendant Dirk Fowler has been renovating the building at

1121 Dillon Dam Road so that it will have the facilities, equipment, and materials necessary for

operating an ongoing illegal recreational marijuana store and grow facility.  Fowler obtained and

signed a building permit from the Town of Frisco that says the renovations are for "Summit

Marijuana Tennant Finish," and he is thus aware of the purpose of these renovations and the broader Summit Marijuana drug conspiracy.  By agreeing and conspiring with Summit Marijuana and Olson to facilitate violations of the CSA, Fowler violated 21 U.S.C. § 846, which is racketeering activity under 18 U.S.C. § 1961(1)(D).

49.     All of the defendants together formed an association-in-fact enterprise for the purpose of cultivating and selling recreational marijuana at 1121 Dillon Dam Road.  To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the cultivation and distribution of marijuana that none of them could have achieved individually.

50.     All of the defendants have contractual or other relationships with each other and are collaborating together to contribute to the association-in-fact enterprise's efforts to cultivate and distribute recreational marijuana at 1121 Dillon Dam Road and thereby engage in an ongoing pattern of racketeering activity.  Summit Marijuana, Olson, The Managers, Inc., Haussman, Voutour, and John Doe 1 all directly or indirectly participated in the financial transactions through which Summit Marijuana took possession of the property at 1121 Dillon Dam Road for the purpose of violating the CSA, and all of them thus have knowledge of each other and their respective roles in the enterprise.  In his capacity as contractor for the renovation of 1121 Dillon Dam Road, Fowler signed a building permit that includes the names of both Summit Marijuana and The Managers, Inc.  And regardless of whether Bank of the West, Katz, Accounting Specialists, Inc., Massa, and Merchants Bonding Co. know the *identities* of all of the other members of the enterprise, each of them knows that *someone* is performing the essential

roles of the other defendants in furtherance of the enterprise's criminal efforts to operate a recreational marijuana shop and grow facility at 1121 Dillon Dam Road.

51.     Summit Marijuana, Olson, and John Doe 1 make many of the enterprise's important decisions.  Olson filled out and submitted Summit Marijuana's applications for licenses to operate a marijuana business at 1121 Dillon Dam Road, which describes the enterprise's business plan and strategic vision.  Summit Marijuana and Olson make decisions about expenditures of the enterprise's finances and participate in decisions about how the property at 1121 Dillon Dam Road will be altered to accommodate the planned recreational marijuana operations.  On information and belief, Summit Marijuana and Olson also consult with John Doe 1 when making such decisions because John Doe 1 has provided substantial financial backing for the enterprise.

52.     The Managers, Inc., Haussman, and Voutour also have key roles in controlling and managing the enterprise.  Because The Managers, Inc., owns 1121 Dillon Dam Road, all three must be consulted before important modifications to the building are made.

53.     All of the defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of operating a recreational marijuana store and grow facility at 1121 Dillon Dam Road.  As set forth above, that goal could only be accomplished through numerous violations of the CSA.  Each such violation of the CSA is racketeering activity, and all of the defendants thus knew and intended that in agreeing to assist the enterprise they would help it carry out a pattern of racketeering activity.

**The RICO Defendants' Marijuana Operations Injure New Vision's Business and Property**

54.     New Vision's business and property has been injured as a direct and proximate result of Defendants' racketeering activities and conspiracy to engage in racketeering activities.

55.     The planned marijuana operations at 1121 Dillon Dam Road is less than 75 yards from the front entrance of New Vision's hotel at 1129 Summit Boulevard, which operates as the Holiday Inn in Frisco.  Because the two buildings share the same parking lot, the hotel's guests will park next to Defendants' employees and customers once the 1121 Dillon Dam Road facility becomes operational.

56.     Running a hotel in such close proximity to a recreational marijuana operation would be problematic under any circumstances, but New Vision's injuries are especially acute because many of its guests are youth ski teams and families with children.  The parents and coaches of the youth ski team members on whom New Vision relies for this important business are especially sensitive to the presence of recreational marijuana operations.  Many parents and coaches will avoid booking with a hotel that is within a short walking distance and direct sight of a recreational marijuana store and grow facility.

57.     Although the recreational marijuana shop and grow facility at 1121 Dillon Dam Road has not yet opened, New Vision has already experienced injuries to its business and property caused by Defendants' illegal conspiracy to cultivate and distribute marijuana and other racketeering activities.  The booking agents for two high school ski teams that have stayed with New Vision each of the past several years have said that their teams will not return to the hotel this year due to Defendants' marijuana operations.  Last year alone, those two teams were

18

responsible for approximately $50,000 in revenue for the hotel.  Numerous other ski teams regularly stay with New Vision, and additional teams are likely to decide not to return after they learn of Defendants' nearby recreational marijuana operations.  Large blocks of rooms like those reserved by youth ski teams are booked long in advance, and New Vision has been forced to incur additional effort and expense in attempting to mitigate the decline in revenue the loss of ski team customers will cause.

58.     In addition to New Vision's ski team guests, many other prospective New Vision guests will be deterred by Defendants' activities and choose to stay at other hotels as a result. Many people perceive recreational marijuana businesses as unseemly establishments that are only found in dangerous neighborhoods.  As a result, Defendants' publicly-announced plans to operate a nearby illegal recreational marijuana facility are making it more difficult for New Vision to obtain advanced bookings for its rooms.  These problems will only become more acute once the 1121 Dillon Dam Road recreational marijuana facility opens and begins to cultivate and sell marijuana.

59.     Prospective New Vision guests also worry that Defendants' recreational marijuana operations will attract crime.  Indeed, as demonstrated above, it is impossible to operate a recreational marijuana business without regularly committing a host of serious federal felonies.  Furthermore, Defendants' recreational marijuana business will be a ready target for theft because it will deal in large amounts of cash and drugs.  Defendants may attempt to combat the threat of an armed robbery or other theft by hiring armed security guards.  But that potential solution only creates more problems for New Vision's business, as many guests would also feel

unsafe around armed guards working for a drug conspiracy.  Because many people looking to

book hotel accommodations in the Frisco area worry that Defendants' operations will attract

crime, Defendants' publicly disclosed conspiracy to engage in a pattern of violations of the CSA

is already making it more difficult for New Vision to book its rooms.  After Defendants'

recreational marijuana facilities become operational, New Vision will be exposed to additional

expense as a result of the need to assure guests that they are safe.  And even after taking

appropriate security measures, New Vision will continue to have increased difficulty filling its

rooms.

60.     The specter of reduced occupancy rates and increased security costs caused by

Defendants' racketeering activities has already reduced the market value of New Vision's

business and property.  Occupancy rates and operating expenses are key factors that determine

the value and profitability of New Vision's hotel.  Accordingly, someone interested in buying the

hotel would not pay as much now that Defendants have announced plans to locate an illegal

recreational marijuana grow and distribution facility a short walk across the hotel's parking lot.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of 18 U.S.C. § 1962(c)
### Against Summit Marijuana, Olson, John Doe 1, The Managers, Haussman, and Voutour

61.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

62.     RICO creates a private right of action for "[a]ny person injured in his business or

property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C.

§ 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged

in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Summit Marijuana, Olson, John Doe 1, The Managers, Haussman, and Voutour each violated this provision of 18 U.S.C. § 1962.

63.     All of the Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with each other and collaborating to develop the property at 1121 Dillon Dam Road for use in the cultivation and sale of recreational marijuana. This enterprise enables the Defendants to more efficiently achieve their collective purpose.

64.     Funding, goods, and services procured by the enterprise have moved in interstate commerce, the enterprise plans to sell marijuana in interstate commerce, and the enterprise's operations are injuring New Vision's ability to attract out-of-state guests.

65.     Summit Marijuana, Olson, John Doe 1, The Managers, Haussman, and Voutour each has some part in directing the enterprise's affairs. Summit Marijuana applied for licenses to operate a recreational marijuana business at 1121 Dillon Dam Road, and Olson owns and controls Summit Marijuana. On information and belief, Olson consults with John Doe 1 before making important financial decisions for the enterprise. And because The Managers owns the property at 1121 Dillon Dam Road, it and its officers—Haussman and Voutour—play an important role in deciding how the building will be modified to accommodate Summit Marijuana's recreational marijuana operations.

66.     Summit Marijuana, Olson, John Doe 1, The Managers, Haussman, and Voutour have each conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  They collectively entered into a lease under which 1121 Dillon Dam Road will be used to commit numerous crimes under the CSA less than 1,000 feet from a truck stop, and that lease violates 21 U.S.C. §§ 856 and 849.  They also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of Summit Marijuana's open-ended illegal marijuana business.  On information and belief, they used communication facilities to enter into their lease and their drug conspiracy in violation of 21 U.S.C. § 843(b).  On information and belief, Summit Marijuana and Olson already possess marijuana and materials and goods for the manufacture of marijuana in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 843(a)(6).  All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

67.     The racketeering activity of Summit Marijuana, Olson, John Doe 1, The Managers, Haussman, and Voutour has proximately injured New Vision's business and property.  The lease agreement under which 1121 Dillon Dam Road is to be used as a recreational marijuana retail shop and cultivation facility and the Defendants' conspiracy to violate numerous provisions of the CSA have discouraged guests from booking stays at New Vision's hotel and forced New Vision to incur additional expense in attempting to mitigate the resulting decline in revenue.  Furthermore, the prospect of lost revenue and increased security costs in the future has reduced the market value of New Vision's business and property.

**COUNT II**
**Violation of 18 U.S.C. § 1962(d)**
**Against All Defendants**

68.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

69.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

70.     The Defendants, for their mutual and individual profit, agreed and conspired to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of cultivating and selling recreational marijuana at 1121 Dillon Dam Road.  The Defendants knew that this patently unlawful scheme could only be accomplished through a pattern of racketeering activity, for maintaining a premises at which marijuana is cultivated and sold, cultivating and selling marijuana, and possessing the goods and materials needed to cultivate and process marijuana are all crimes under the CSA.  *See, e.g.*, 21 U.S.C. §§ 841(a), 843(a)(6), 856.

71.     Funding, goods, and services procured by Defendants in furtherance of their association-in-fact enterprise for the purpose of cultivating and selling recreational marijuana have moved in interstate commerce, the enterprise plans to sell marijuana in interstate commerce, and the enterprise's operations are injuring New Vision's ability to attract out-of-state guests.

72.     The Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c).  All of the Defendants violated 21 U.S.C. § 846 by

agreeing and conspiring to assist in the establishment of Summit Marijuana's recreational marijuana business.  And Summit Marijuana, The Managers, and their agents entered into a real estate agreement to operate a recreational marijuana retail store and cultivation facility within 1,000 feet of a truck stop in violation of 21 U.S.C. §§ 856 and 849.

73.     Those racketeering activities directly and proximately injured New Vision's business and property.  The lease agreement and conspiracy have discouraged prospective guests from booking stays at New Vision's hotel and forced New Vision to incur additional expense in attempting to mitigate the resulting decline in revenue.  Furthermore, the prospect of lost revenue and increased security costs in the future has reduced the market value of New Vision's business and property.

**COUNT III**
**Violation of 18 U.S.C. § 1962(c)**
**Against Olson**

74.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

75.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Olson violated 18 U.S.C. § 1962(c).

76.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity."  18 U.S.C. § 1961(4).  Summit Marijuana is a Colorado limited liability corporation.  Thus, it is a RICO "enterprise."

77.     Olson is the owner and sole member of Summit Marijuana.  He therefore has a role in directing its affairs.

78.     Olson has conducted or participated in the conduct of the affairs of Summit Marijuana through a pattern of racketeering activity.  On information and belief, he already possesses marijuana plants and equipment and materials for growing marijuana that he intends to use in his recreational marijuana business in violation of 21 U.S.C. §§ 841(a) and 843(a)(6).  On information and belief, he has used the telephone, email, or other communication facilities to take steps in furtherance of Summit Marijuana's drug-related activities in violation of 21 U.S.C. § 843(b).  He agreed to a lease under which marijuana is to be cultivated and sold at 1121 Dillon Dam Road within 1,000 feet of a truck stop in violation of 21 U.S.C. §§ 856 and 849.  He agreed and conspired with the other Defendants to violate numerous provisions of the CSA by growing and selling marijuana in violation of 21 U.S.C. § 846.  All of these crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

79.     Funding, goods, and services procured by Olson for Summit Marijuana have moved in interstate commerce, Summit Marijuana plans to sell marijuana in interstate commerce, and Summit Marijuana's operations are injuring New Vision's ability to attract out-of-state guests.

80.     Olson's racketeering activities directly and proximately injured New Vision's business and property.  Those activities have discouraged prospective guests from booking stays at New Vision's hotel and forced New Vision to incur additional expense in attempting to mitigate the resulting decline in revenue.  Furthermore, the prospect of lost revenue and increased security costs in the future has reduced the market value of New Vision's business and property.

**COUNT IV**
**Violation of 18 U.S.C. § 1962(d)**
**Against Olson, John Doe 1, Katz, Fowler, Accounting Specialists, Massa, Merchants Bonding, and Bank of the West**

81.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

82.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Olson, John Doe 1, Katz, Fowler, Accounting Specialists, Massa, Merchants Bonding, and Bank of the West agreed and conspired to violate 18 U.S.C. § 1962(c).

83.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity."  18 U.S.C. § 1961(4).  Summit Marijuana is a Colorado limited liability corporation.  Thus, it is a RICO "enterprise."

84.     Funding, goods, and services procured by Defendants for Summit Marijuana for the purpose of cultivating and selling recreational marijuana have moved in interstate commerce,

Summit Marijuana plans to sell marijuana in interstate commerce, and Summit Marijuana's

operations are injuring New Vision's ability to attract out-of-state guests.

85.     Olson, John Doe 1, Katz, Fowler, Accounting Specialists, Massa, Merchants

Bonding, and Bank of the West are each associated with Summit Marijuana and agreed to help

Summit Marijuana establish and operate a recreational marijuana shop and grow facility at 1121

Dillon Dam Road.

86.     Olson, John Doe 1, Katz, Fowler, Accounting Specialists, Massa, Merchants

Bonding, and Bank of the West each understood that their collective efforts to establish and

operate the recreational marijuana operations at 1121 Dillon Dam Road could only be

accomplished through a pattern of racketeering activity.  Specifically, all understood and agreed

that Olson would violate the CSA by cultivating recreational marijuana and selling it, 21 U.S.C.

§ 841(a), possessing the equipment and materials necessary for marijuana cultivation, *id.*

§ 843(a)(6), and maintaining the premises at 1121 Dillon Dam Road as a location for cultivating

and selling recreational marijuana less than 1,000 feet from a truck stop, *id.* §§ 856, 849.  Each

of those crimes is racketeering activity, and together they form a pattern.

87.     Racketeering activities undertaken in furtherance of the conspiracy among Olson,

John Doe 1, Katz, Fowler, Accounting Specialists, Massa, Merchants Bonding, and Bank of the

West have injured New Vision's business and property.  Olson is maintaining 1121 Dillon Dam

Road as a premises for cultivating and selling recreational marijuana in violation of 21 U.S.C.

§§ 856 and 849.  And Olson, John Doe 1, Katz, Fowler, Accounting Specialists, Massa,

Merchants Bonding, and Bank of the West have all agreed and conspired to violate the CSA

under 21 U.S.C. § 846.  Those racketeering activities in furtherance of the conspiracy to violate

18 U.S.C. § 1962(c) have discouraged prospective guests from booking stays at New Vision's

hotel and forced New Vision to incur additional expense in attempting to mitigate the resulting

decline in revenue.  Furthermore, the prospect of lost revenue and increased security costs in the

future has reduced the market value of New Vision's business and property.

## COUNT V
### Violation of 18 U.S.C. § 1962(c)
### Against Haussman and Voutour

88.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

89.     RICO creates a private right of action for "[a]ny person injured in his business or

property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C.

§ 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged

in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity or collection of unlawful debt."  Haussman and Voutour violated 18 U.S.C. § 1962(c).

90.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation,

association, or other legal entity."  18 U.S.C. § 1961(4).  The Managers, Inc. is a Colorado

corporation.  Thus, it is a RICO "enterprise."

91.     Haussman is the President of The Managers and Voutour is the Secretary of The

Managers.  As officers for the corporation, they each have roles in directing its affairs.

92.     The Managers owns a building next to an interstate highway that is being renovated for the sale of recreational marijuana into interstate commerce.  Those activities interfere with New Vision's ability to attract out-of-state guests to its hotel.

93.     Haussman and Voutour have each conducted or participated in the conduct of the affairs of The Managers through a pattern of racketeering activity.  In violation of 21 U.S.C. §§ 856 and 849, they leased the building at 1121 Dillon Dam Road with the intention that it would be used to cultivate and sell recreational marijuana less than 1,000 feet from a truck stop. And in violation of 21 U.S.C. § 846, they each agreed to assist Summit Marijuana and Olson in their efforts to develop the property at 1121 Dillon Dam Road for cultivating and selling marijuana.  Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D) and together form a pattern.

94.     The racketeering activities undertaken by Haussman and Voutour have proximately injured New Vision's business and property by discouraging prospective guests from booking stays at New Vision's hotel and forcing New Vision to incur additional expense in attempting to mitigate the resulting decline in revenue.  Furthermore, the prospect of lost revenue and increased security costs in the future caused by Haussman's and Voutour's racketeering activities has reduced the market value of New Vision's business and property.

**PRAYER FOR RELIEF**

95. WHEREFORE, Plaintiffs pray for an order and judgment:

    a.   Awarding New Vision three times the damages to its business and property that were caused by Defendants' racketeering activities and conspiracies to engage and racketeering activities.

    b.   Enjoining the Defendants from continuing to engage in racketeering activities.

    c.   Awarding Plaintiffs their reasonable costs, including attorneys' fees incurred in bringing this action.

    d.   Granting such other and further relief as this Court deems just and proper.

Date:   February 19, 2015

Respectfully submitted,

s/David H. Thompson
David H. Thompson
*Counsel of Record*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

*Of Counsel*:
Charles J. Cooper
Michael W. Kirk
Howard C. Nielson, Jr.
Peter A. Patterson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)

*Counsel for Plaintiffs*