IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00350-MSK-MJW

NEW VISION HOTELS TWO, LLC

    Plaintiff,

v.

MEDICAL MARIJUANA OF THE ROCKIES, LLC; GERALD JAY OLSON; DAVID KATZ; MERCHANTS BONDING CO.; ACCOUNTING SPECIALISTS, INC.; AND MICHAEL MASSA,

    Defendants.

___

**DEFENDANTS ACCOUNTING SPECIALISTS, INC. AND MICHAEL MASSA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

___

Defendants Accounting Specialists, Inc. and Michael Massa (collectively the "Accountants"), through undersigned counsel Berg Hill Greenleaf & Ruscitti, LLP, hereby respectfully submit the following response in opposition to Plaintiff's Motion for Summary Judgment. In addition, the Accountants respectfully join in their co-defendants' responses or oppositions to Plaintiff's motion.

**INTRODUCTION**

Plaintiff New Visions Hotels Two, LLC ("Plaintiff") Motion for Summary Judgment [Doc. 72] (the "Motion") should be denied as to Counts II and IV for several reasons, the most compelling being that Plaintiff presents no evidence of any actual agreement by the Accountants

to perform any services with the aim of furthering Medical Marijuana of the Rockies, LLC ("MMJ of the Rockies") and/or Gerald Jay Olson's ("Mr. Olson's") violations of the Controlled Substances Act ("CSA"). The only evidence of any agreement between the Accountants and MMJ of the Rockies and/or Mr. Olson is the agreement whereby the Accountants agreed to provide accounting services to MMJ of the Rockies and to assist MMJ of the Rockies in fulfilling its obligation to pay state and federal taxes. At a minimum, there are disputed issues of fact as to whether these ancillary professional services performed by the Accountants for MMJ of the Rockies were performed with the aim of furthering any conspiracy to violate the CSA, which is the only racketeering activity alleged by Plaintiff. In addition, there are at least disputed issues of fact as to whether the Accountants were participants in the conspiracy to distribute marijuana near Plaintiff's hotel that is alleged to have harmed Plaintiff, and even if the Court determines otherwise, the Defendants should be allowed to conduct discovery with respect to Plaintiffs alleged damages. As such, summary judgment in favor of Plaintiff at this juncture is improper, and the parties should be allowed to conduct discovery.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the non-moving party. *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

## ARGUMENT

### I. THERE ARE AT LEAST DISPUTED ISSUES OF FACT AS TO WHETHER THE ACCOUNTANTS AGREED TO ASSIST IN COMMITTING RACKETEERING ACTIVITY.

It is black letter law that the essence of any conspiracy claim is an agreement amongst the conspirators to advance the goals of the conspiracy. Plaintiff apparently concedes this given the authority cited in the Motion, yet Plaintiff points to no actual agreement whereby the Accountants agreed to assist MMJ of the Rockies or Mr. Olson in obtaining, cultivating or selling marijuana (or in any other alleged racketeering activity). This is because no such agreement exists. Instead, the Motion argues that providing professional services to a marijuana dispensary, in and of itself, constitutes an agreement to assist the dispensary in violating the CSA. In the context of a conspiracy claim pursuant to Section 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), this is not enough. Indeed, even under the authority cited by Plaintiff in the Motion, in order to prove conspiracy liability on behalf of the Accountants, Plaintiff must establish that that "ancillary functions such as…accounting…are performed *with the aim of furthering the conspiracy*." *See* Motion at pg. 10 (citing *United States v. Soto-Beniquez*, 356 F.3d 1, 18 (1st Cir. 2003).

This clearly requires some factual finding as to the Accountants' intent in performing ancillary professional services for MMJ of the Rockies. As noted in the attached declaration, the Accountants did not perform any work (or agree to do anything else) with the aim of furthering the conspiracy (to the extent any conspiracy actually existed). *See* Exhibit A ("Massa Declaration") at ¶¶ 14-16. As noted in the Massa Declaration, the Accountants only intent in providing accounting services was to assist MMJ of the Rockies in complying with its

3

obligations under state and federal tax laws. *Id.* at ¶ 17. It is difficult to imagine how helping someone pay taxes on revenue from marijuana that has already been sold could be construed as actually helping them sell marijuana, but that is the inference the Motion asks this Court to make. In the context of a motion for summary judgment, however, the Court must instead draw all inferences in favor of the non-moving party, the Accountants. *See English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse.*, 165 F.3d 1321, 1326 (10th Cir. 1999)). This requirement, coupled with the Massa Declaration's statements regarding the Accountants intent, plainly establishes that there is at least a disputed issue of material fact as to what the Accountants "aim" was in providing accounting services to MMJ of the Rockies. Accordingly, summary judgment in favor of Plaintiff on Counts II and IV should be denied.

At bottom, at least with respect to the Accountants, Plaintiff is asking this Court to determine that providing ancillary professional services to a marijuana business implicates the service provider in a RICO conspiracy as a matter of law. There is absolutely no legal authority supporting such a determination, and all of the cases cited by Plaintiff in support of its argument regarding the Accountants purported conspiracy liability are readily distinguishable from the case at bar. Unlike in this case, the accountants or "bookkeepers" in the cases cited by Plaintiff were performing services that directly furthered the purpose of the conspiracy they were participating in.

Indeed, even a cursory review of the cases cited by Plaintiff shows that the Accountants in this case, simply by providing ancillary accounting services, did not agree to join the conspiracy alleged by Plaintiff. This is because in order to "join a drug conspiracy, a defendant

4

must agree with others to advance the aim of the conspiracy – here, to possess drugs for distribution." *United States v. Soto-Beniquez*, 356 F.3d at 16 (citing *United States v. Garcia-Torres*, 280 F.3d 1, 4 (1st Cir. 2002)). Because Plaintiff has presented no evidence that the Accountants ever agreed to help Medical Marijuana of the Rockies possess marijuana for distribution, the inquiry should end here, and summary judgment should be denied.

Reviewing all of the cases relied upon by Plaintiff in support of its argument for summary judgment against the Accountants in the Motion leads to the same result. The leading case relied upon by Plaintiff is *Salinas v. United States*, 522 U.S. 52 (1997) ("*Salinas*"). However, Plaintiff's reliance upon *Salinas* is misplaced, because the *Salinas* Court merely held that the "partners in the criminal plan must agree to pursue the same criminal objective, and may agree to divide up the work, yet each is responsible for the acts of the other." *See Salinas v. United States*, 522 U.S. at 63-64. While *Salinas* makes it clear that "[o]ne can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense," the *Salinas* Court never held that merely providing services someone you know is committing criminal acts makes you a co-conspirator. *Id*. at 65. In fact, such a holding would turn conspiracy liability on its head, and more importantly, such liability would have no logical stopping point. It would create co-conspirator liability for the barista who provides Mr. Olson with his morning coffee knowing he is on his way to work in the dispensary, or the snow plow driver who plows the dispensary parking lot for a fee, or the courier who delivers parcels to the dispensary (regardless of their contents), or for any other person who provides a service to an entity knowing, merely by dint of its name, that the entity sells marijuana. In short, *Salinas* resulted in a narrow holding that resolved nothing more than a circuit split as to whether a RICO conspirator must personally

5

commit two predicate RICO violations in order to be implicated in a RICO conspiracy, and it cannot be broadened to implicate the Accountants in this case absent an affirmative agreement with MMJ of the Rockies to facilitate the distribution of marijuana. *Id*. at 64-66.

Subsequent authority applying *Salinas* makes it clear that in order to prove a RICO conspiracy, a plaintiff must prove "(1) that the defendant agreed to participate in the operation or management of the enterprise itself, and (2) that the defendants further agreed that someone would commit at least two predicate acts." *See Gen. Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, 2009 U.S. Dist. LEXIS (Dist. of Colo., March 2, 2009) (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 732 (7th Cir. 1998). Since *Salinas*, the 10th Circuit has provided additional guidance in holding that for a plaintiff to prove a RICO conspiracy, he must prove that the defendant "knew about and agreed to facilitate the commission of – rather than personally committed or agreed to commit – at least two of the predicate acts constituting a pattern of racketeering activity." *See United States v. Smith*, 413 F.3d 1253, 1272 (10th Cir. 2005). This squares well with Supreme Court precedent holding that professional service providers, and specifically accountants, cannot be liable for RICO violations under §1962(c) when they do not take part in the direction of an enterprises affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 177-78 (1993). Since there is no evidence that the Accountants took part in the direction of MMJ of the Rockies' affairs, or agreed to somehow help MMJ of the Rockies in such direction, the only way the Accountants could possible conspire to help conduct MMJ of the Rockies through a pattern of racketeering activity would be if the Accountants had agreed to facilitate the underlying acts of racketeering. *See United States v. Smith*, *supra*.

6

In the instant case, there is no evidence that the Accountants agreed to facilitate the commission of any predicate acts. The only racketeering activity alleged in Plaintiff's complaint, and therefore the only possible predicate acts that needed to be "facilitated" by the Accountants to support conspiracy liability, are various alleged violations of the CSA related to selling marijuana. *See* Complaint [Doc. 1] *generally*; *see also* Motion at 6-8. There is no evidence that the Accountants were "partners" with MMJ of the Rockies, or that the Accountants agreed to pursue the sale of marijuana with MMJ of the Rockies, or anyone else, and there is certainly no evidence that the Accountants agreed to perform any share of the work related to selling marijuana. *Id*. at 63-64. Moreover, there is no evidence that the Accountants agreed to facilitate any acts leading up to MMJ of the Rockies obtaining, cultivating, or selling marijuana. *Id.* at 65. To the contrary, the evidence shows that the Accountants never provided business advice to MMJ of the Rockies, or assisted MMJ of the Rockies in procuring or selling marijuana in any way. *See* Massa Declaration at ¶¶ 14-15.

Turning to the cases cited by Plaintiff that specifically reference accountants or bookkeepers, also leads to the same result. First, it should be noted that the Motion cites *United States v. Soto-Beniquez* twice for the proposition that providing "ancillary services" such as "accounting" can support RICO conspiracy liability. *See* Motion at Pgs. 9-10. This might leave one with the impression that *Soto-Beniquez* was a case about accountants, or perhaps even a RICO case, but it is neither. In fact, *Soto-Beniquez* only mentions the word "accountants" in *dicta* while reciting a litany of ancillary activities that could potentially give rise to drug conspiracy liability "such as processing and cooking drugs, procuring weapons, collecting monies, enforcing discipline, chastising rivals, *accounting,* and the like, *as long as such actions*

*are performed with the aim of furthering the conspiracy.*" See *United States v. Soto-Beniquez*, 356 F.3d at 16 (emphasis added).

Plaintiff's discussion of *United States v. Zichettelo*, 205 F.3d 72 (2d. Cir. 2000) is limited to a quotation from another case cited by Plaintiff, *United States v. Rastelli*, 870 F.2d 822 (2d. Cir. 1989), both of which are also easily distinguished from the case at bar. See Motion at pg. 9. Both of these cases dealt with co-conspirators who defended, in part, on the basis that they did not commit any predicate acts of racketeering, and are therefore inapposite, however, both of those cases emphasize that in order to be liable as a conspirator, the defendant must have "embraced the objective of the conspiracy." See *United States v. Zichettelo*, 205 F.3d 72, 99 (2d. Cir. 2000) (internal citations omitted). In addition, *Rastelli* held that a defendant must either "agree personally to commit, or to aid and abet the commission of, two predicate acts [in order to] be convicted of a RICO conspiracy violation." See *United States v. Rastelli*, 870 F.2d 822, 832 (2d. Cir. 1989). This holding is in line with the 10th Circuit's post-*Salinas* analysis in *United States v. Smith*, *supra*.

The only two cases cited in the Motion that deal directly with bookkeepers (as opposed to merely mentioning "accountants" in *dicta*) make it clear that the Accountants were not acting as "bookkeepers" for MMJ of the Rockies in the same sense of the word that was utilized in those cases. In fact, the "bookkeeper" in *United States v. Orozco-Prada*, 732 F.2d 1076 (2d. Cir. 1984), Mr. Humberto Orozco, was counting cash, breaking it down by denomination, and crediting it to accounts of the customers of a money laundering scheme that he was participating in. See *United States v. Orozco-Prada*, 732 F.2d 1076, 1085 (2d. Cir. 1984). He also made numerous deposits in an account the money laundering operation maintained at a foreign

8

exchange house, and delivered an illegal $5,000 payment to an FBI agent. *See id*. The reviewing court found that "given the many conspiratorial activities in which Humberto Orozco participated," his conviction for conspiring to commit money laundering was amply supported by the evidence. *See id*.

Finally, in *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976), while it is true that Joseph Hawes was convicted, at least in part, due him helping a racketeering enterprise "keep bookkeeping worksheets," that was far from the only thing Mr. Hawes was doing in his role in the illegal gambling conspiracy in that case. *See United States v. Hawes*, 529 F.2d 472, 481-82 (5th Cir. 1976). He was also a "route man" who placed illegal gambling machines in private clubs, collected money after making certain deductions and divided the net return with the private clubs on the basis of a prearranged percentage, kept business records, supervised maintenance, trained other route men, supervised other employees of the illegal enterprise, and was the son of the ring leader. *See id*. That notwithstanding, *Hawes* does provide some insight as to whether the Accountants participated in a conspiracy in that the *Hawes* Court noted that a "party's stake in a conspiracy is relevant to the question of his or her participation." *See United States v. Hawes*, 529 F.2d at 482.

In short, there is nothing talismanic about the words "bookkeeper" or "accountant" that automatically confers RICO co-conspirator status upon any individual so titled. The key to the analysis is whether the bookkeeper or accountant agreed to commit RICO predicate acts or assist someone else in committing RICO predicate acts, thereby agreeing to "facilitate" the commission of the predicate acts. *See United States v. Smith*, *supra*; *see also United States v. Rastelli*, *supra*. "[M]ere association with the enterprise [does] not constitute an actionable

9

1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential." *See Goren v. New Vision Int'l*, 156 F.3d at 732 (citing *United States v. Neopolitan*, 791 F.2d 489, 499 (7th Cir. 1986). In this case, the Accountants did nothing to facilitate MMJ of the Rockies obtaining, cultivating or selling marijuana, and most importantly, had no stake in MMJ of the Rockies sale of marijuana. *See* Massa Declaration at ¶¶ 3-6, 14-15. At a minimum, there are disputed issues of material fact regarding the Accountants intent in providing accounting services to MMJ of the Rockies, and whether the Accountants agreed to facilitate any predicate acts, and summary judgment for the Plaintiff should not be granted.

## II. THERE ARE DISPUTED ISSUES OF FACT AS TO WHETHER THE ACCOUNTANTS JOINED THE CONSPIRACY THAT ALLEGEDLY CAUSED PLAINTIFF'S INJURY.

While the Motion contends that all of the remaining defendants somehow conspired together to assist MMJ of the Rockies in distributing marijuana, the Motion ignores the possibility that even if the Accountants did agree to assist MMJ of Rockies in selling *medical* marijuana simply by providing accounting services (which they do not concede), that is not the conspiracy that was allegedly going to harm Plaintiff, and there are disputed issues of fact as to whether the Accountants joined the conspiracy that Plaintiff alleges would have harmed its business. Indeed, the Complaint and the Motion are very specific in that it was an alleged conspiracy to distribute "recreational marijuana" that Plaintiff feared would cause injury to its business. In fact, the Complaint uses the term "recreational marijuana" seven times in the first two pages alone, and never alleges any injury by virtue of anything other than the planned distribution of "recreational marijuana. *See generally* Complaint [Doc. 1]. The Motion is equally specific, and unequivocally argues that Plaintiff was injured by a conspiracy to cultivate

and/or distribute "recreational marijuana." *See* Motion at pg. 12. The Accountants, however, only performed work for a medical marijuana dispensary at a different location, and that work was performed based upon financial records that not only pre-date any possible predicate acts of the alleged conspiracy to distribute recreational marijuana, but even pre-date MMJ of the Rockies' application for a recreational marijuana license. *See* Massa Declaration at ¶¶ 8-9; *see also* Motion at Ex. 2, pg. 9.

This is significant because in the context of multiple conspiracies, even when conspiracies have similar objectives, and common leadership, the conspiracies are separate and distinct unless the conspiracies aid or benefit each other and the members of the conspiracies are aware of the other conspiracies. *See Kotteakos v. United States*, 328 U.S. 750 (1946). Often referred to as "wheel" conspiracies, where each spoke is a separate conspiracy with a common person or entity at the hub, absent some connection (the rim) among the various conspirators (the spokes), a single conspiracy cannot be proven and instead multiple conspiracies exist. *Id*. at 1243-44. In short, the spokes cannot be liable for the actions of each other absent a rim tying them together.

In this case, the Accountants only agreed to provide accounting services to MMJ of the Rockies. Massa Declaration at ¶ 15. The entire time the Accountants were performing such services, the Accountants understood MMJ of the Rockies to be operating a medical marijuana dispensary at 720 N. Summit Boulevard in Frisco, Colorado. *Id.* at ¶ 10. This location is almost three quarters of a mile away from Plaintiff's hotel. *Id*. at ¶ 12. MMJ of the Rockies operated for several years at this address with no alleged impact on Plaintiff's business. *See* Statement of Undisputed Facts [Doc. 80] at ¶ 11; *see also* Complaint [Doc. 1] *generally* (no allegations of any

harm to business or property arising out of MMJ of the Rockies operation at 720 N. Summit Boulevard). The Accountants did not know The Managers, Inc., Robert L. Haussman, Christine Voutour, David Katz, John Doe 1, Dirk Fowler, Bank of the West or Merchants Bonding Co. *Id*. at ¶ 13. Additionally, the Accountants had no idea that MMJ of the Rockies was allegedly conspiring with some (or all) of these entities and individuals to open a recreational marijuana facility at 1121 Dillon Dam Road. *Id*. at ¶ 11. In fact, the Accountants had never even heard of "Summit Marijuana" until they were served with this lawsuit. *Id*.

While it is difficult to discern from the Complaint which predicate acts of the conspiracy to distribute recreational marijuana at the Dillon Dam Road address caused the alleged injury to Plaintiff's business, there can be no question that Plaintiff alleges no harm arising from MMJ of the Rockies sale of medical marijuana at the 720 N. Summit Boulevard address. Accordingly, even if the provision of accounting services to a medical marijuana dispensary constitutes a RICO conspiracy *per se* (which the Accountants deny), there are at least disputed issues of fact as to whether the Accountants joined the conspiracy that is alleged to have caused injury to Plaintiff's business, and summary judgment is therefore improper.

### III. THERE ARE DISPUTED ISSUES OF FACT AS TO DAMAGES.

The Motion asserts that there are no disputed issues of fact with respect to Plaintiff's damages, however, this assertion overlooks the fact that Plaintiff is claiming entitlement solely for money spent purportedly mitigating damages. Assuming *arguendo*, that mitigation costs are recoverable as damages in a civil RICO action where no injury to business ever occurred, mitigation costs must still be reasonable in order to be recoverable. *See Fair v. Red Lion Inn*,

943 P.2d 431, 437 (Colo. 1997). Generally, what constitutes "reasonable," is a question of fact for the trier of fact to determine. *See id*.

The Motion provides no basis for evaluating whether Plaintiff's purported mitigation costs were reasonable, it simply establishes that money was spent. *See* Motion at Pg. 12-14. Even a cursory review of the support for Plaintiff's damages reveals that at least some of that money was spent on things that had nothing to do with at least one of the things Plaintiff claims it did in mitigation of damages. *See* Motion at Pg. 13 and Ex. 18 – Helmer Bill. More specifically, the Helmer Bill was purportedly for representing Plaintiff at a Frisco Town Council meeting regarding a proposed amendment to its marijuana ordinances. Something Plaintiff contends it did to mitigate damages. *See* Motion at Pg. 13. A review of Helmer Bill, however, reveals that many of the billing entries for which Plaintiff is seeking reimbursement actually had nothing to do with such a town meeting. *See* Motion at Ex. 18, pg. 97 (Billing entry for "Conference with Natalie brain storming violation of state constitution anti discrimination clause on employee housing basis"); *see id*. (Billing entry for "Telephone conference with Bill Carroll re 3d ski team has threatened to drop out and slander as an avenue for cause of action"); *see id.* at pg. 98 (Billing entry for "Conference with Dave, Natalie, Adam, Andy and Bill re potential causes of action, relevant facts to case, strategy going forward, any and all potential avenues for relief).

These few billing entries alone establish disputed issues of fact as to whether these billing entries were reasonable efforts to mitigate damages, or really just Plaintiff exploring all possible avenues of recourse against the Defendants. The can be no question that the latter has nothing to do with mitigating damages, and Plaintiff makes no arguments in the Motion as to how such

13

expenditures are recoverable. Accordingly, there are disputed issues of fact regarding damages, summary judgment is improper, and the Defendants should be allowed to conduct discovery with respect to Plaintiff's alleged damages.

For all of these reasons, and for the reasons argued by the other Defendants in their responses to the Motion, the Motion should be denied.

Respectfully submitted this 17th day of July, 2015.

                                 BERG HILL GREENLEAF & RUSCITTI LLP

                                 *s/ Jason T. Pink*
                                 _____
                                 Jon N. Banashek
                                 Jason T. Pink
                                 1712 Pearl Street
                                 Boulder, CO  80302
                                 Phone:  (303) 402-1600
                                 Fax:  (303) 402-1601
                                 Email:  jnb@bhgrlaw.com
                                              jtp@bhgrlaw.com

                                 *Attorneys for Defendants*
                                 *Accounting Specialists, Inc. and Michael Massa*

# CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2015, I electronically filed the foregoing **DEFENDANTS ACCOUNTING SPECIALISTS, INC. AND MICHAEL MASSA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses, and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Brian Wesley Barnes
Charles J. Cooper
David H. Thompson
Cooper & Kirk PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
bbames@cooperkirk.com
ccooper@cooperkirk.com
dthompson@cooperkirk.com

Adam Wolf
Peiffer Rosca Wolf Abdullah
   Carr & Kane
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
awolf@prwlegal.com

Daniel J. Carr
Peiffer Rosca Wolf Abdullah
   Carr & Kane
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
dcarr@prwlegal.com

Colin R. Ray
Peiffer Rosca Wolf Abdullah
   Carr & Kane
1422 Euclid Avenue, Suite 1610
Cleveland, OH 44114
cray@prwlegal.com

Peter A. Patterson
Cooper & Kirk PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
ppatterson@cooperkirk.com

Connor Lee Cantrell
Patrick Q. Hustead
The Hustead Law Firm
4643 S. Ulster Street, Suite 1250
Denver, CO  80237
 clc@thlf.com
pqh@thlf.com

*s/ Cheryl Stasiak*

_____
Cheryl Stasiak

15